1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

SHAWN PETERS,

         Plaintiff,

    vs.

SAMSUNG SDI CO., LTD., a Korean
Corporation, SAMSUNG SDI
AMERICA, INC., a Michigan
Corporation, INFINITE VAPORS, a
Minnesota Business Entity,
UPTOWN VAPORS, LLC, a
Minnesota Business Entity, and DOES
1-100 inclusive,

         Defendants.

Case No.: 23-cv-00754-ECT-ECW

**FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

**PRITZKER HAGEMAN, P.A.**
100 University Avenue SE
Minneapolis, MN 55414
Phone: (612) 338-0202
Facsimile: (612) 338-0104

**BENTLEY & MORE LLP**
4931 Birch Street
Newport Beach, California 92660
Phone:    (949) 870-3800
Facsimile:   (949) 732-6291
*Attorneys for Plaintiff, Shawn Peters*

Plaintiff, as and for his causes of action against the above-named Defendants, states and alleges:

## I.    INTRODUCTION

1.    Plaintiff Shawn Peters ("Shawn") purchased an electronic cigarette and related parts. The Defendants are the manufacturers, wholesalers, distributors, and retailers of the electronic cigarette and related parts. On or about January 7, 2020, Shawn was walking into a local restaurant when suddenly and without warning his e-cigarette products exploded in his front pocket causing him severe burns to his left hand, leg, thigh, and genitals.

2.    Electronic cigarettes, or e-cigarettes[1] as they are more commonly known, claim to provide a tobacco free alternative to the traditional cigarette. E-cigarettes offer doses of nicotine with a vaporized solution that provides a physical sensation similar to tobacco smoke, supposedly without the harmful effects of actual tobacco or smoke. E-cigarettes also offer non-nicotine vaporized solutions, coming in enticing flavors such as gummy bear, vanilla, and blueberry pancake. Using e-cigarettes is known as "vaping", and users are known as "vapers". In addition to the e-cigarette used by Shawn, Defendants manufacture, design, and sell a variety of other e-cigarette products sold across Minnesota.

3.    All e-cigarettes function basically the same way. They consist of three parts: (1) a tank or cartridge ("cartridge"); (2) a battery, which heats the liquid nicotine and other chemicals (often called "juices" or "e-liquids") that are held within the cartridge; and (3) an atomizer, which converts the e-liquid to vapor that the user inhales. Some e-cigarettes use closed-system cartridges—cartridges that are prefilled with e-liquid by the manufacturer before purchase. Others use open-

---

[1] These products are also referred to as electronic nicotine delivery systems (ENDS), personal vaporizers (PVs), electronic smoking devices, vapor products, and alternative nicotine delivery devices, among others.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  system cartridges—cartridges that are manually refilled with e-liquid by the user
2  after purchase. The batteries used in e-cigarettes are cylindrical lithium-ion
3  batteries. Some batteries are rechargeable, and others are disposable. Finally, e-
4  cigarettes are produced in pen form (modeled after the traditional cigarette) and in
5  mod form (mechanical or electrical devices that are heavier and carry a much
6  higher capacity for juice and vapor).

7          4.      The lack of legislative and judicial oversight in the e-cigarette
8  industry has created serious risks for consumers who buy e-cigarettes as a safer
9  alternative; these products do not include adequate instructions, proper warnings,
10  or compatible components. Shawn's excruciating pain and severe injury are the
11  result of Defendants' failure to make their products safe before introducing them
12  into the market for use.

## II.    THE PARTIES

15          5.      Plaintiff, Shawn Peters, is and at all relevant times was, a resident of
16  the County of Hennepin, State of Minnesota.

17          6.      Plaintiff alleges that defendant, Infinite Vapors, is and at all relevant
18  times mentioned herein was, a business entity licensed to conduct business or
19  conducting business in Minnesota, through its agents and/or employees, and is the
20  alter ego and/or joint venture of other corporations, entities and business interests,
21  each of which is conducting business in the County of Hennepin, the state of
22  Minnesota. Defendant Infinite Vapors, retails e-cigarette products, including the e-
23  cigarette products purchased by Shawn that are the subject of this lawsuit.

24          7.      Plaintiff alleges that defendant, Uptown Vapors LLC is a limited
25  liability company organized and existing under the laws of Minnesota, transacting
26  business in the state of Minnesota, with its principal office located at 2708 Summer
27  St NE, Minneapolis, MN 55413. Defendant Uptown Vapors, LLC, retails e-
28  cigarette products, including the e-cigarette products purchased by Shawn that are

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

the subject of this lawsuit. Uptown Vapors LLC has, upon information and belief, also updated its name, with the same business address and business, to be Turning Leaf Uptown LLC.

8.    Plaintiff alleges that defendant, Samsung SDI America, Inc., a Michigan corporation, is and at all relevant times mentioned herein was, licensed to conduct business or conducting business in Minnesota, through its agents and/or employees, and is the alter ego and/or joint venture of other corporations, entities and business interests, each of which is conducting business in the County of Hennepin, the State of Minnesota. Defendant Samsung SDI America, Inc. manufactures e-cigarette products, including the battery purchased by Shawn that is the subject of this lawsuit.

9.    Defendant Samsung SDI America Inc. manufactures e-cigarette products, including the battery purchased by Shawn that is the subject of this lawsuit. In addition, Samsung SDI Co. Ltd. has extensive, ongoing, and specific contacts with Minnesota that include, but are not limited to, the following:

    a.   Samsung SDI America Inc. has continuing contacts with Hennepin County by manufacturing, distributing, and/or selling goods with the reasonable expectation that they will be used in this county and which are in fact used, sold, distributed, and retailed in this county.

    b.   Defendant Samsung SDI America Inc. has continuing contacts with Minnesota by transacting substantial business in this state and manufacturing, distributing, and/or selling goods with the reasonable expectation that they will be used in this state and which are in fact used in this state.

    c.   This Court has specific personal jurisdiction over the parties to this civil action because the subject incident occurred in this state, and Samsung SDI America Inc. has purposefully availed itself of the privileges and benefits of doing business in Minnesota. In addition,

- 4 -

Samsung SDI America Inc.  contacts with Minnesota principally relate to the placement of electronic devices, including e-cig batteries, into the stream of commerce, and all of the conduct associated with placing those products into the stream of commerce in Minnesota and associated with this civil action is related to and connected with the placement of batteries used in electronic cigarette devices into the stream of commerce.

d.  Samsung SDI America Inc. manufactured and sold into the stream of commerce—placing itself in the distribution chain— the *specific battery* that caused the injuries at issue in this matter.

10.    Plaintiff alleges that defendant, Samsung SDI Co. Ltd., a Korean corporation, is and at all relevant times mentioned herein was, a Korean corporation licensed to conduct business or conducting business in Minnesota, through its agents and/or employees, and is the alter ego and/or joint venture of other corporations, entities and business interests, each of which is conducting business in Hennepin County, the State of Minnesota. Defendant Samsung SDI Co. Ltd. manufactures e-cigarette products, including the battery purchased by Shawn that is the subject of this lawsuit. In addition, Samsung SDI Co. Ltd. has extensive, ongoing, and specific contacts with Minnesota that include, but are not limited to, the following:

a.  Samsung SDI Co. Ltd. has continuing contacts with Hennepin County by manufacturing, distributing, and/or selling goods with the reasonable expectation that they will be used in this county and which are in fact used, sold, distributed, and retailed in this county.

b.  Defendant Samsung SDI Co. Ltd. has continuing contacts with Minnesota by transacting substantial business in this state and manufacturing, distributing, and/or selling goods with the reasonable

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

expectation that they will be used in this state and which are in fact used in this state.

c.  This Court has specific personal jurisdiction over the parties to this civil action because the subject incident occurred in this state, and Samsung SDI Co. Ltd. has purposefully availed itself of the privileges and benefits of doing business in Minnesota. In addition, Samsung SDI Co. Ltd.'s contacts with Minnesota principally relate to the placement of electronic devices, including e-cig batteries, into the stream of commerce, and all of the conduct associated with placing those products into the stream of commerce in Minnesota and associated with this civil action is related to and connected with the placement of batteries used in electronic cigarette devices into the stream of commerce.

d.  Samsung SDI Co. Ltd. manufactured and sold into the stream of commerce—placing itself in the distribution chain— the *specific battery* that caused the injuries at issue in this matter.

11.   In addition, Plaintiff makes the following additional jurisdictional allegations against Samsung SDI America, Inc., and Samsung SDI Co. Ltd. (collectively referred to as "Samsung"):

a.  Samsung sells its batteries to worldwide markets, utilizing distributors across the globe to ensure the reach of its battery products in all markets.  This is particularly true in Minnesota, where Samsung has, upon information and belief, established particular lithium-ion battery distributors to which it ships large quantities of its cylindrical lithium-ion batteries.  Those batteries are then redistributed, sold, packaged, transported, or provided to end users in Minnesota and across the United States for use.  The regular course and scope of Samsung's batteries involves the shipping of huge quantities of its batteries, both

the cylindrical lithium-ion battery at issue here, as well as Samsung's other energy storage products, into and throughout Minnesota, and indeed the world.

b. In addition, Samsung's 18650 batteries are sold in Minnesota, Samsung collects data on how its 18650 batteries perform in the state, and directs advertising and marketing efforts within the state. Based on information and belief, during at least the years 2013 to the present, Samsung supplied, sold, shipped, distributed and provided directly to consumers and distributors throughout the State of Minnesota, thousands (if not millions) of its products, including cylindrical lithium-ion batteries, which were sold for use, and used, in Minnesota. Based on information and belief, Samsung marketed, advertised, targeted consumers, and promoted the sale of its various products, including lithium-ion batteries, to numerous consumers and distributors throughout Minnesota. Upon information and belief, those distributors, and other distributors located throughout the United States and the world, in turn sold large quantities of products, including Samsung lithium-ion batteries to wholesalers and retailers located in Minnesota for the direct sale to Minnesota consumers, where said products were purchased by Minnesota residents and used in this State. Based on information and belief, Samsung's marketing, advertising, sale, distribution network, and provision of batteries to Minnesota resulted in the use of thousands, if not millions, of Samsung products, particularly cylindrical lithium-ion batteries, in the State of Minnesota—and comprising one of Minnesota's primary distribution channels for its products.

c. Samsung encouraged the sale of its products, including 18650 batteries, throughout the United States, including to the distributor of

the subject battery, and did not attempt to limit the territory in which the distributor sold its products.

d. Samsung, both individually and through its subsidiaries and sales and marketing arms and authorized distributors in the United States, ships and sells thousands, if not millions, of Samsung 18650 lithium-ion battery cells to companies and customers in Minnesota, including but not limited to The Toro Company, Tennant Company, and Polaris, Inc.  This constitutes a recognized and well known attempt to serve the market for lithium-ion batteries in Minnesota, with Samsung knowingly subjecting itself to, and consenting to, jurisdiction by the courts in Minnesota.

e. Samsung has also partnered with local companies in Minnesota on lithium-ion battery and energy storage solutions, including specifically installing Samsung SDI lithium-ion batteries at the University of Minnesota (Minneapolis, MN). https://www.eenewseurope.com/en/samsung-sdi-dynapower-team-on-home-energy-systems/

f. In addition to the authorized Samsung batteries shipped directly to Minnesota and sold/distributed throughout Minnesota, Samsung also engages, upon information and belief, in a grading process for the various batteries it manufacturers.  Upon information and belief, those batteries that fail to achieve a sufficient grade or conform appropriately to standards are not discarded.  Instead, in the interests of profit, Samsung sells those inferior or nonconforming lithium-ion battery products to other distributors, with Samsung knowing full well they may be using those batteries for individual electronic or other uses—uses that may not be explicitly authorized, but are certainly permitted by Samsung in the interest of maintaining its profitability.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

In addition, based upon information and belief, in the manufacturing process, Samsung ends up with a significant quantity of batteries with cosmetic defects in the wrapper, without a wrapper at all, or with batteries with other types of cosmetic and other defects.  Again, instead of discarding those batteries, Samsung knowingly sells those substandard batteries to various distributors throughout the world to remove the cosmetically defective or missing wrapper, apply their own wrapping, and then sell those batteries for other uses. Those batteries are then sold to consumers throughout the world, and readily and rapidly reach Minnesota, all at the reasonable expectation or explicit knowledge of Samsung. Based on these two avenues, Samsung ultimately sells huge quantities of lithium-ion batteries that end up in the electronic cigarette market in Minnesota, and end up in the hands of Minnesota consumers, including upon information and belief, the battery at issue in this matter.

g.  For at least the last eight years, it has been well known in the electronic cigarette industry, and based upon information and belief, well known to Samsung, that its lithium-ion batteries were being used in connection with electronic cigarettes and were even *recommended* by multiple online sources for e-cig use, by *vendors located in Minnesota*.

h.  But those batteries can carry a catastrophic risk of explosion to end users in the electronic cigarette marketplace. Indeed, even on the primary search engine used in Samsung's home country, South Korea, there are *hundreds* of news articles detailing the explosion issues with electronic cigarette batteries such as Samsung's 18650 battery (the type that exploded here).  The first of these articles appear as early as February 2012 and detail a spate of explosions across the world,

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

damaging and burning faces, mouths, hands, legs, and bodies. With respect to administrative action, the U.S. Fire Administration published a report in October 2014 detailing fires and explosions in electronic cigarettes dating back to *2009*; the U.S. Dept of Transportation permanently banned e-cigs in checked baggage in 2016, and the FDA has been expressing concern for these dangerous products for years. Finally, based on information and belief, Samsung has been named, or is about to be named, as a defendant in *dozens* of electronic cigarette explosions across the country, where one of its batteries has caused catastrophic injuries to people across the U.S. and around the world, including in Minnesota.

i.  Despite Samsung's knowledge, at the time of the sale and explosion at issue here, Samsung's batteries were widely, readily, and easily available at electronic cigarette retail stores throughout Minnesota, as well as available for direct shipment online from Amazon, Alibaba, Walmart, and other online retailers. Samsung has long known, tolerated, and permitted this alternative use of its lithium-ion batteries, as it is a ready profit driver for Samsung. Only recently, with the spike in explosions of Samsung batteries—and resulting bad press—has Samsung taken any action to attempt to stem the tide of its batteries reaching Minnesota and the U.S. generally.

j.  Finally, Samsung has alleged that recovery is barred against the sellers based on Minnesota's "seller exception" statute—meaning that Samsung has alleged that it may be the only source of recovery for Plaintiff's injuries.

k.  Samsung is personally subject to specific jurisdiction in this Court based on the following:

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

i.  Because Samsung is subject to the Minnesota long-arm statute by doing business in Minnesota and by contacting and contracting with Minnesota residents and by performing such contracts in part in Minnesota and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Minnesota;

ii.  Because the episode-in-suit which serves as the basis of the claims against Samsung in this case is related to Samsung's conduct of selling lithium-ion batteries both directly into Minnesota and indirectly through third-party distributors;

iii.  Because Samsung participated in placing the electronic cigarette battery at issue into the stream of commerce;

iv.  Because Samsung expected and intended that electronic cigarette batteries it manufactured would be sold and used in Minnesota by Minnesota residents;

v.  Because key elements of the episode-in-suit occurred in Minnesota, including the purchase of the Samsung battery as well as the explosion causing Plaintiff's injuries;

vi.  Because Samsung has purposefully availed itself of the benefits of doing business in Minnesota, by partnering with companies, establishing authorized distributors, investing in ventures, and being repeatedly haled into court in this State;

vii.  Because Samsung's contacts with Minnesota principally relate to the placement of batteries and energy storage solutions into the stream of commerce, and all of the conduct associated with placing those products into the stream of commerce in Minnesota and associated with this civil action is related to and

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

connected with the placement of batteries used in electronic cigarette devices into the stream of commerce;

viii. Because due process and fair play and substantial justice are honored by this civil action going forward in this court located in Minnesota;

ix. Because there is little or no burden on Samsung litigating this case in this court located in Minnesota, as it has *already* retained local counsel to represent it in this action, is actively litigating cases in Minnesota, and in those cases may provide documents and testimony electronically and by videoconference, lessening any potential burden;

x. Because it would be a tremendous burden and great inefficiency and unnecessary delay imposed on Plaintiff to litigate this case in another forum;

xi. Because Minnesota has an interest in overseeing this litigation which involves injuries to a Minnesota resident and tortious transactions which occurred in Minnesota and defective products sold in Minnesota;

xii. Because public policy favors resolution of this dispute in Minnesota; and

xiii. Because Samsung's conduct and connection with Minnesota are such that Samsung should reasonably anticipate being haled into court in Minnesota.

12.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1-100, inclusive, and each of them, are unknown to Plaintiff, who thereby sues these Defendants by such fictitious names, and will ask leave of this court to amend this complaint when the true names are ascertained.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

13.    Plaintiff is informed and believes and, on that basis, alleges that each Defendant named herein as a Doe is responsible in some manner for the events and happenings referred to herein which proximately caused injury to Plaintiff as hereinafter alleged.

14.    Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein the Defendants, and each of them, were the agents, servants, employees, and joint venturers of each other, and were as such acting within the course, scope and authority of said agency and employment and or joint venture, and that each and every Defendant, when acting as a principal, was negligent and reckless in the selection, hiring, entrustment and supervision of each and every other Defendant as an agent, servant, employee, or joint venturer.

15.    Venue is proper in Hennepin County, Minnesota because it is where a substantial portion of the events giving rise to this action occurred, and it is where Defendants Infinite Vapors and Uptown Vapors, LLC have their office and principle place of business.

### III.
### FACTUAL BACKGROUND

A.    **Background of e-cigarettes**

16.    The explosion and resulting fire of Shawn's e-cigarette product that caused severe and painful burns to his left thigh and genitals was not a novel occurrence. There is mounting evidence that the explosions and fires caused by e-cigarettes are increasing and have injured many consumers.

17.    E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger—the battery-powered heating element can cause, and has caused, explosions, fires, and serious injury.  Lithium-ion batteries, commonly used in all types of e-cigarettes,

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

have an inherent risk of fire and explosion.[2] Combining lithium-ion batteries with a heating element, as done in e-cigarettes, poses serious dangers and risks.

18.    E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often a cylindrical device; when inner components of the e-cigarette overheat or combust, shrapnel exits the cylindrical device via the path of "least resistance" in a projectile manner, putting the cautious user at risk of a life-threatening injury. There are different methods to protect against these batteries, but because of a lack of regulation, the protections are left up to the e-cigarette manufacturers. (*Id*. at 6.)

19.    An inherent danger of lithium-ion batteries is that the "poor design, use of low-quality materials, manufacturing flaws and defects, and improper use and handling can all contribute to a condition known as 'thermal runaway', whereby the internal battery temperature can increase to the point of causing a battery fire or explosion." (*Id*. citing Brown CM, Cheng JM. *Electronic Cigarettes: Product Characterization and Design Considerations*, Tobacco Control, 2014.) Experts in emergency medicine noted that as the industry grows, "the potential for serious burn injuries related to device malfunction is of concern." (*Spontaneous Electronic Cigarette Explosion: A Case Report*, American Journal of Medical Case Reports, 2015, Vol. 3, No. 4, 93-94, 94.)

20.    The e-cigarette industry carries mass appeal to manufacturers, distributors, and sellers because the cost of production is low and the return on profits is high. Currently, manufacturers, distributors, and sellers are not required to spend any money on testing or to otherwise ensure the safety of e-cigarette products.

---

[2] Lithium-ion batteries have been referred to as the "mini bomb in your pocket" due to its known ability to spontaneously ignite (*See* Ben D., Ma B., Liu L, et al, *Unusual Burns with Combined Injuries Caused by Mobile Phone Explosion: Watch Out for the "Mini Bomb!"*, J Burn Care Res 2009 Nov-Dec; 30(6): 1048.)

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

21.     E-cigarettes continue to be placed into the stream of commerce without any federal regulatory, manufacturing, and quality control standards. Proposed federal regulations address the tobacco aspect of e-cigarettes but completely fail to address the manufacturing and quality control aspects of these products.  As was noted in October 2014 and as is the case now, "no regulation, code, or law applies to the safety of the electronics or batteries in e-cigarettes. While many consumer products are required to be tested by a nationally recognized test laboratory...there are no requirements that e-cigarettes be subjected to product safety testing." (United States Fire Administration, Electronic Cigarette Fires and Explosions, October 2014, at 2. (emphasis added).)

22.     These e-cigarette products, such as what was purchased and used by Shawn, continue to be placed into the stream of commerce despite being untested and unsafe. E-cigarettes will continue to cause injuries from explosions and fire as suffered by Shawn unless and until those placing them in the stream of commerce are held accountable.

**B.     Samsung SDI Co. Ltd. and Doe Defendants 51-100, inclusive, have long exhibited a conscious disregard for public safety in the distribution, sale, design, and lack of testing of Samsung batteries**

23.     Lithium-ion batteries are, by nature, a powerful and potentially unstable energy storage device, necessitating strict quality control.  Samsung SDI Co. Ltd., Samsung SDI America, Inc. and Does 51-100 (collectively referred to in this section as "SAMSUNG") have long known that lithium-ion batteries are subject to explosion and catastrophic venting, whether the event is caused by overcharging, by an external short, by damage to the battery itself, or by some other mechanism.  Based on information and belief, SAMSUNG has long been aware of the likelihood of lithium-ion battery explosions, both through public

reports, consumer complaints, and other sources of information about the inherent danger in SAMSUNG's faulty products.

24.    In addition, and for at least the last five years, it has been well known in the electronic cigarette industry that SAMSUNG's lithium-ion batteries were being used in connection with electronic cigarettes, and were even *recommended* by multiple online sources for e-cig use.

25.    Based on information and belief, and despite knowledge of the risks and the ongoing use of SAMSUNG batteries in e-cig applications, SAMSUNG failed to conduct any serious product testing to reduce the risk for explosions and harm in scenarios where SAMSUNG batteries are used on an individual basis (such as in an electronic cigarette). SAMSUNG also ignored readily available, relatively inexpensive design changes that could have prevented these types of explosions, deferring any corrective action. For example, there is no adequate circuitry, physical characteristic, enhanced coating, or other protective safeguard to ensure consumer safety. Instead, it was more profitable for SAMSUNG to do nothing, produce the batteries as-is, turn a blind eye to the massive issues with SAMSUNG lithium-ion batteries, and ignore the looming catastrophe for Minnesota—and world-wide—consumers.

26.    SAMSUNG's dangerous product and gamble with public safety was eventually revealed through press reports of numerous explosions, through administrative actions, and through the bevy of lawsuits filed against electronic cigarette battery manufacturers in general, and SAMSUNG in particular. Indeed, even on the primary search engine used in SAMSUNG's home country, South Korea, there are *hundreds* of news articles detailing the explosion issues with electronic cigarette batteries such as SAMSUNG's 18650.  The first of these articles appear as early as February 2012 and detail a spate of explosions across the world, damaging and burning faces, mouths, hands, legs, and bodies. With respect to administrative action, the U.S. Fire Administration published a report in October

2014 detailing fires and explosions in electronic cigarettes dating back to *2009*; the U.S. Dept of Transportation permanently banned e-cigs in checked baggage in 2016, and the FDA has been expressing concern for these dangerous products for years.  Finally, based on information and belief, SAMSUNG has been named, or is about to be named, as a defendant in no less than *60* electronic cigarette explosions across the country, where one of its batteries has caused catastrophic injuries to people across the U.S. and around the world.

27.    Despite this knowledge, SAMSUNG continues to permit the sale of its batteries through vendors to individuals around the word.  On even a casual search, SAMSUNG 18650 batteries are available for individual purchase at numerous locations across the internet and in physical stores, without any sufficient warning, instruction, or guideline to end users. SAMSUNG's batteries can be readily purchased for individual use with electronic cigarettes, and continue to injure individuals around the world.

28.    Ignoring its knowledge of the dangers associated with its product, SAMSUNG has refused to take any meaningful steps to reduce the danger, such as installing additional safety mechanisms, recalling its defective batteries, or taking any reasonable steps to better protect consumers, like Shawn in this matter.

29.    Because SAMSUNG has long known of the problems with its product, because it failed to adequately test its product (which would have revealed both the inherent dangers as well as the inexpensive fixes), and because SAMSUNG continued to produce its dangerous batteries and endanger consumers around the world, its actions demonstrate a conscious disregard of public safety, a disregard that has caused untold harm to consumers around the world, and to Shawn in particular.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**C.      The explosion that changed Shawn's life**

30.      At the time of the explosion, Shawn lived in Hopkins, Minnesota. In 2014, he started using e-cigarette because he believed they were a safer and healthier alternative then traditional tobacco products.

31.      In late 2019, Shawn purchased his e-cigarette products, including a VooPoo Mod and Samsung lithium-ion batteries from Defendants Infinite Vapor and Uptown Vapors, LLC.  The mod, battery and other related products, will be referred to herein as the "E-Cig Products," which were manufactured, wholesaled, distributed, and retailed by Defendants and Does 1-100.

32.      On or around January 7, 2020, Shawn was arriving at work when suddenly and without warning, the Samsung batteries in his left front pocket exploded. The sudden blast was so great, that Shawn's pants, leg, and genitals immediately caught fire.

33.      After he was able to put out the fire, Shawn noticed that his skin was hanging in charred pieces on his leg and black residue was everywhere. He was immediately transported via ambulance to HCMC Medical Center.

34.      Once admitted to the hospital Shawn was given an IV and his 2nd and 3rd degree burns were debrided and cleaned. He was then transferred to the burn unit for further consult.

35.      The explosion and Shawn's resulting injuries were caused by defective E-Cig Products and by the Defendants' negligence.

36.      The explosion took a significant toll on Shawn's physical and emotional health. He has trouble sleeping, walking, and performing daily tasks. He no longer has feeling in the affected area and is experiencing significant emotional trauma as a result of the incident.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**(Strict Products Liability)**

PLAINTIFF SHAWN PETERS FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS INFINITE VAPORS, UPTOWN VAPORS, LLC., SAMSUNG SDI CO., LTD., SAMSUNG SDI AMERICA, INC. AND DOES 1-100, INCLUSIVE, FOR STRICT PRODUCTS LIABILITY, ALLEGES:

37. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

38. At all times mentioned herein, Defendants and Does 1-100, inclusive, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, wholesaling, and advertising the E-Cig Products Shawn purchased and used, including the Samsung Battery.

39. On or about January 7, 2020, Shawn placed the Samsung batteries, into his left front pocket when it suddenly exploded, causing severe and painful burns to his left hand, leg, thigh, and genitals.

40. Defendants and Does 1-100, inclusive, knew that consumers would use the E-Cig Products as Shawn did on or about January 7, 2020.

41. In addition, Defendants Infinite Vapors, Uptown Vapors, LLC, and Does 1-50 had actual knowledge of the defects in the product which caused Shawn's injuries and damages, including the potential for fires and explosions, and had such knowledge at or before the time of sale to Plaintiff.  Such knowledge was gleaned from multiple sources, including, but not limited to, the following:

   a. As early as 2014, the U.S. Fire Administration published a report detailing that more than *25 separate incidents of explosion and fire* involving electronic cigarettes had been reported in the United States. The report noted that "The shape and construction of e-cigarettes can

- 19 -

make them more likely than other products with lithium-ion batteries to behave like 'flaming rockets' when a battery fails."

b. In May 2016, the U.S. Department of Transportation *banned* battery powered portable electronic smoking evidence (e.g., e-cigarettes) from checked luggage or from charging the devices on board an aircraft, because "a number of recent incidents have shown that e-cigarettes in checked bags can catch fire during transport." (https://www.transportation.gov/briefing-room/dot-bans-e-cigarettes-checked-baggage)

c. In July 2017, the U.S. Fire Administration again published another report, detailing that "The combination of an electronic cigarette and a lithium-ion battery is a new and unique hazard. There is no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette." Noting that "it is likely that the number of incidents and injuries will continue to increase," the report documents at least 195 separate incidents of explosion and fire documented in the media from 2009 to the end of 2016. Importantly, the report specifically stated that "it is clear that these batteries [cylindrical lithium-ion batteries] are not a safe source of energy for these devices." (https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf.)

d. As the industry finally began to recognize the problem, additional attempts went toward documenting the widespread scope of potential explosions and other failures. In September 2018, the NIH documented cases that appeared in 31 published articles describing 164 cases of electronic cigarette explosions and fires. And in June 2019, in a study of electronic cigarette explosion and burn injuries, the

BENTLEY & MORE LLP
TELLING YOUR STORY
B&M

BMJ published an article finding that *at least 2,035 electronic cigarette explosion and burn injuries* were suffered in the United States across *only two years* (2015-2017). (https://tobaccocontrol.bmj.com/content/28/4/472)

e.  This led to *hundreds* of lawsuits around the country (including in Minnesota) detailing the issues with electronic cigarettes and putting retailers and sellers on notice of the dangers of the products they continued to peddle. More than 120 lawsuits were filed around the country in *2017 alone.* (https://www.courthousenews.com/vape-battery-explosion-lawsuits-on-the-rise/).

f.  A June 2019 report from CNN documented cases from around the country causing serious injuries—and even deaths—from the very type of cylindrical, removable lithium-ion battery at issue in this matter. https://www.cnn.com/2019/06/19/health/e-cigarette-vape-explode-teen-study/index.html.  This particular story was picked up around the country and even published by CBS Minnesota. (https://www.cbsnews.com/minnesota/news/e-cigarette-explodes-in-teens-mouth-shattering-his-jaw/).

g.  In summary, prior to the sale of the electronic cigarette components at issue in this litigation, there were *hundreds,* if not thousands, of news reports, articles, journals, lawsuits, and other published material describing the dangers associated with electronic cigarettes and the lack of safety standards implemented by manufacturers, distributors, and retailers.

h.  In recent years, manufacturers of cylindrical lithium-ion batteries, particularly the model denoted as an "18650" (which stands for the dimensions of the battery—18mm in diameter and 65mm in length) have begun claiming that their batteries are not designed to serve as

- 21 -

replaceable, rechargeable power sources for products such as electronic cigarettes, and that such use may enhance the danger of their products.  Yet electronic cigarette "mods" sold by Defendants here are specifically *designed* to utilize 18650 cylindrical lithium-ion batteries—which magnifies the danger to consumers when they also utilize replaceable, rechargeable batteries, as the external coating can become damaged or other issues arise that can lead to the *very problem* with explosions and fires.

i. In addition, Defendants Infinite and Uptown put FAQs on their website including the questions "Will my battery blow up?" and "What causes devices to vent/explode? And how can I prevent this?" Based on information and belief, they obtained this knowledge *well before* the date of sale of the products at issue in this matter to Shawn Peters, yet nevertheless continued to sell dangerous, defective equipment into the marketplace.

j. Based on information and belief, Defendants Infinite Vapors, Uptown Vapors, LLC, and Does 1-50 had actual knowledge—for years before selling the electronic cigarette products at issue in this litigation—of the following: (1) the extensive explosions of lithium-ion batteries in connection with electronic cigarettes across the country and in Minnesota in particular; (2) the well-documented reports, lawsuits, and dangers of continuing to sell replaceable, rechargeable lithium-ion batteries as a power source for electronic cigarettes; (3) the dangers and defects present in the electronic cigarette products they continued to sell to the consuming public; and (4) the lack of any warning, safety device, or other feature of the products that would prevent or lessen the danger posed by selling such a dangerous, defective product.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

42.     Defendants and Does 1-100, inclusive, manufactured, designed, assembled, packaged, tested, fabricated, inspected, marketed, distributed, and sold the E-Cig Products and each of their component parts with defects in both design and manufacturing which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.

43.     The design and manufacturing defects in the E-Cig Products included: defective and unsafe design, which resulted in excessive overheating of the E-Cig Products, causing them to catch fire in the course of intended use and in the course of non-use.

44.     The E-Cig Products contained a design and/or manufacturing defect when the E-Cig Products were introduced into the stream of commerce by Defendants and Does 1-100, inclusive.

45.     The E-Cig Products were defective, unsafe, and unreasonably dangerous for their ordinary, expected, and intended use when they left Defendants' control. Due to the design and/or manufacturing defects, the E-Cig Products failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

46.     Furthermore, the risk of danger in the design of the E-Cig Products outweighed any benefits of the design and safer alternative designs were available at the time of manufacture. Therefore, the E-Cig Products presented a substantial and unreasonable risk of serious injuries to users of said E-Cig Products or those in the vicinity of use.

47.     Shawn's use of the E-Cig Products the Defendants manufactured and sold was in a manner expected, intended, and reasonably anticipated.

48.     The defects in the design and manufacture of the E-Cig Products and its components parts directly and proximately caused Shawn's severe injuries and damages as herein alleged.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

49.    Defendants and Does 1-100, inclusive, had actual or constructive knowledge of the risks inherent in the E-Cig Products at the time of their sale to Shawn, and that they could cause explosion and fire.

50.    The inherent risks and dangers in using the E-Cig Products in an intended or reasonably foreseeable way presented a substantial danger to Shawn.

51.    An ordinary consumer, such as Shawn, would not have recognized the potential risks and dangers inherent in the E-Cig Products.

52.    Defendants and Does 1-100, inclusive, failed to warn of the dangers in the reasonably foreseeable use of the E-Cig Products. Nowhere does the product or packaging warn of risk of explosion. There were simply no warnings about the hazards inherent in the E-Cig Products.

53.    Defendants' and Does 1-100s', inclusive, failure to warn of the risks and instructions on safe use was a substantial factor in causing Shawn's severe injuries and damages as herein alleged.

54.    As a direct and proximate result of the defective E-Cig Products, and Defendants' and Does 1-100s', inclusive, failure to warn, Shawn sustained severe personal injuries and damages, as alleged herein:

      1)    Shawn has suffered, continues to suffer, and will in the future suffer great mental, physical and emotional pain, in sums according to proof at the time of trial; and

      2)    Shawn was required to, and did, and will in the future, employ physicians and surgeons to examine, treat and care for him, and did and will in the future incur medical and incidental expenses for such care and services, in a sum according to proof at the time of trial; and

      3)    Shawn has incurred past and future loss of earnings and diminished earning capacity, in an amount according to proof at the time of trial.

- 24 -

55.    SAMSUNG SDI CO. LTD. and Does 51 - 100's, inclusive, conduct described herein was despicable conduct carried out with a willful and conscious disregard of the risk of safety to Shawn. SAMSUNG'S and Does 51 - 100, inclusive, failed to implement a safer alternative, or conduct any testing or safety precautions on devices that have an inherent risk of explosion. SAMSUNG'S and Does 51 - 100, inclusive, knew of the risk that the e-cigarette would explode and knowingly failed to take steps to design and manufacture a safer product, or warn consumers of such known risks. SAMSUNG'S and Does 51 - 100, inclusive, placed profit over safety and knowingly decided to forego safer designs in order to cut corners and costs.

56.    SAMSUNG SDI CO. LTD. and Does 51-100's, inclusive, conduct described herein was undertaken by its officers or managing agents, who were responsible for the design, manufacture, marketing, wholesaling, retailing, distributing, packaging, and warnings regarding use of the E-Cig Products. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of SAMSUNG'S and Does 51-100, inclusive. SAMSUNG SDI CO. LTD. and said Does 51-100, inclusive, further had advance knowledge of the actions and conduct of these individuals whose actions and conduct were ratified, authorized, and approved by managing agents.

## SECOND CAUSE OF ACTION

### (Negligent Products Liability)

PLAINTIFF SHAWN PETERS FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS INFINITE VAPORS, UPTOWN VAPORS, LLC., SAMSUNG SDI CO., LTD., SAMSUNG SDI AMERICA, INC. AND DOES 1-100, INCLUSIVE, FOR NEGLIGENT PRODUCTS LIABILITY, ALLEGES:

57.    Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

58.    Defendants and Does 1-100, inclusive, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, and advertised the E-Cig Products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

59.    Defendants and Does 1-100, inclusive, owed a duty to Shawn to exercise reasonable care in the design, manufacture, and sale of the E-Cig Products, to ensure the E-Cig Products were safe for their reasonably foreseeable use.

60.    Defendants and Does 1-100, inclusive, also owed a duty to properly and adequately warn Shawn and other consumers of foreseeable dangers that Defendants and Does 1-100 knew or should have known.

61.    Defendants and Does 1-100, inclusive, failed to exercise the amount of care in the design, manufacture, and sale of the E-Cig Products, that a reasonably careful manufacturer, designer, seller, wholesaler, or distributor would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

62.    Defendants and Does 1-100, inclusive, knew or reasonably should have known that the E-Cig Products were dangerous when used or misused in a reasonably foreseeable manner.

    a.    In addition, Defendants Infinite Vapors, Uptown Vapors, LLC, and Does 1-50 knew or should have known of the danger based on the information and knowledge discussed *supra*, knew of the potential defects and dangers associated with continuing to sell substandard, poorly designed, and dangerous products, and knew that continuing to sell such devices was dangerous to consumers.

63.    Defendants and Does 1-100, inclusive, knew or reasonably should have known that users would not realize the danger of explosion and/or fire.

64.    Defendants and Does 1-100, inclusive, failed to adequately warn of the dangers of explosion and/or fire, or instruct on the safe use of the E-Cig Products.

65.    A reasonable manufacturer, designer, seller, wholesaler, or distributor in similar circumstances would have warned of the danger, or instructed on safe use of the product.

66.    Defendants' and Does 1-100s', inclusive, failure to warn or instruct was a direct and proximate cause of Shawn's harm.

67.    As a proximate result of said negligent conduct, Plaintiff suffered injuries as previously alleged. The negligence of Defendants and Does 1-100, inclusive, was a direct and proximate cause of the explosion, fire, and serious injuries to Shawn as previously alleged.

68.    Plaintiff incorporates by reference the damage allegations of paragraph 41 alleged against Defendants and Does 1-100, inclusive, as though fully set forth herein.

69.    Defendant SAMSUNG SDI CO. LTD., SAMSUNG SDI AMERICA, INC., and Does 51-100's, inclusive, conduct described herein was despicable conduct carried out with a willful and conscious disregard of the risk of safety to Shawn. SAMSUNG and Does 51-100, inclusive, failed to implement a safer alternative, or conduct any testing or safety precautions on devices that have an inherent risk of explosion. SAMSUNG and Does 51-100, inclusive, knew of the risk that the e-cigarette would explode and knowingly failed to take steps to design and manufacture a safer product, or warn consumers of such known risks. SAMSUNG and Does 51-100, inclusive, placed profit over safety and knowingly decided to forego safer designs in order to cut corners and costs.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

70.    SAMSUNG SDI CO LTD., SAMSUNG SDI AMERICA, INC. and Does 51-100's, inclusive, conduct described herein was undertaken by its officers or managing agents, who were responsible for the design, manufacture, marketing, wholesaling, retailing, distributing, packaging, and warnings regarding use of the E-Cig Products. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of SAMSUNG and Does 51-100, inclusive. SAMSUNG and said Does 51-100, inclusive, further had advance knowledge of the actions and conduct of these individuals whose actions and conduct were ratified, authorized, and approved by managing agents.

## **PRAYER**

WHEREFORE, Plaintiff Shawn Peters, prays for judgment against the Defendants, and each of them, in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, costs and disbursements, and such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

The Plaintiff hereby demands a jury trial.

Dated: April 25, 2023           PRITZKER HAGEMAN, P.A.

BENTLEY & MORE LLP


/S/ Matthew W. Clark
David Coyle (MN # 396431)
PRTIZKER HAGEMAN, P.A.
100 University Avenue SE
Minneapolis, MN 55414
P: (612) 338-0202
F: (612) 338-0104
Email: dcoyle@pritzkerlaw.com

AND

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gregory L. Bentley (CA Bar #151147)
Matthew W. Clark (CA Bar #273950)
Farnaz Salessi (CA Bar #327289)
Braydon R. Bentley (CA Bar #339940)
*Attorneys admitted pro hac vice*
**BENTLEY & MORE LLP**
4931 Birch Street
Newport Beach, California 92660
Phone:        (949) 870-3800
Facsimile:    (949) 732-6291
gbentley@bentleymore.com
mclark@bentleymore.com
fsalessi@bentleymore.com
bbentley@bentleymore.com

*Attorneys for Plaintiff, Shawn Peters*

- 29 -

Case No: 23-cv-00754-ECT-ECW
Shawn Peters vs. Samsung SDI Co., Ltd., et al.

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MINNESOTA**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  4931 Birch St., Newport Beach, CA 92660.

On April 25, 2023, I served the foregoing document described as:
**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** on all interested parties in this action by placing [ ] the original  [ XX ]a true copy thereof either into the electronic filing system described below or enclosed in sealed envelopes addressed as follows:

**See Attached List**

[  ]BY MAIL
    I caused such envelope to be deposited in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[XX]BY CM/ECF SERVICE:  I caused such document(s) to be delivered electronically via CM/ECF as noted herein

[  ]BY PERSONAL SERVICE
    I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto.  A proof of service executed by the delivery person will be mailed under separate cover.

[  ]BY OVERNIGHT MAIL/COURIER

Case No: 23-cv-00754-ECT-ECW
Shawn Peters vs. Samsung SDI Co., Ltd., et al.

To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[  ] BY FACSIMILE ("FAX")
In addition to the manner of proof of service indicated above, a copy was sent by FAX to the above-listed party.

[XX] BY ELECTRONIC TRANSMISSION:
I caused a copy of the document(s) to be sent from e-mail address
sgomez@bentleymore.com  to the persons at the e-mail address(es)
listed in the  attached Service List. No electronic message or other indication
that the transmission was unsuccessful was received within a reasonable
time after the transmission.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.

Executed on April 25, 2023, at Newport Beach, California.

/s/ Sandra A. Gomez
SANDRA A. GOMEZ

Case No: 23-cv-00754-ECT-ECW
Shawn Peters vs. Samsung SDI Co., Ltd., et al.

## SERVICE LIST

| ATTORNEY OF RECORD | PARTY |
| --- | --- |
| Michael R. Carey, Esq.<br>DYKEMA<br>4000 Wells Fargo Center,<br>90 South Seventh Street<br>Minneapolis, MN 55402<br>Work: (612) 486-1589<br>Fax: (866) 388-8596<br>mcarey@dykema.com | Attorneys for Defendant,<br>SAMSUNG SDI CO., LTD. |